UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

U.S. DISTRICT COURT
DISTRICT OF N.H.
FILED

2016 MAR -2 P 3: 47

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:15-cr-77-01-JL |
| | ) | |
| JUAN A. PICHARDO MENDEZ | ) | |

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the United States

of America by its attorney, Emily Gray Rice, the United States Attorney for the District of New

Hampshire, and the defendant, Juan A. Pichardo Mendez, and the defendant's attorney, Paul J.

Garrity, Esquire, enter into the following Plea Agreement:

1.  The Plea and The Offense.

The defendant agrees to plead guilty to Counts One and Two of the Indictment charging

him with attempting to possess with the intent to distribute the controlled drug cocaine base and

the unlawful use of a communications facility to commit the attempted possession with the intent

to distribute the controlled drug cocaine base.

In exchange for the defendant's guilty pleas, the United States agrees to the sentencing

stipulations identified in section 6 of this agreement.

2.  The Statutes and Elements of the Offenses.

Count One

Title 21, United States Code, Sections 841(a)(1) and 846 provide, in pertinent part:

> "Except as authorized by this subchapter, it shall be unlawful for
> any person knowingly or intentionally to [attempt to] ... possess
> with intent to ... distribute a [Schedule II] controlled substance."

-1-

The defendant understands the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant intended to commit the offense of possession with the intent to distribute a controlled substance; and

Second, that the defendant took a substantial step toward the commission that offense.

*United States v. Bristol-Martir*, 570 F.3d 29, 39 (1st Cir. 2009).

Count Two

Title 21, United States Code, Section 843(b) provides, in pertinent part:

"It shall be unlawful for any person [to] knowingly ... use any communication facility in committing or in causing or facilitating the commission of any act or acts constituting a felony under any provision of ... [subchapter 1 of chapter 13].

The defendant understands the offense has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant used a communication facility as charged in the indictment (i.e., a telephone); and

Second, that the defendant used the telephone facility in committing or in causing or facilitating the commission of any act or acts constituting felony as charged in the indictment (i.e., attempting to possess with the intent to distribute a controlled substance).

3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would prove the following facts and those facts would establish the elements of the offense beyond a reasonable doubt:

-2-

In and around late July of 2014, the defendant offered to compensate F.P. if he would accept delivery of a package that was being shipped from the Dominican Republic. The defendant told F.P. that he had recently returned from a trip to the Dominican Republic. The defendant told F.P. not to open the package and to contact him when the package arrived.

On or about July 30, 2014, Customs and Border Protection ("CBP") agents at the Rafael Hernandez Airport in Aquadilla, Puerto Rico, intercepted a box shipped via Federal Express that originated in the Dominican Republic. The package was addressed to "Jimmy Paul" at F.P.'s address in Manchester, New Hampshire. An inspection of the box revealed two foil packages of white powder concealed in the top flaps of the cardboard box. A field test of a sample of the white powder was positive for cocaine, but a later laboratory analysis confirmed the presence of cocaine base. The CBP agents alerted Department of Homeland Security ("DHS") agents in Manchester, New Hampshire, about the package and sent the box to their office.

When the box arrived at the Manchester DHS office, agents removed the foil packages of white powder. They placed a small sample of the powder in a plastic bag that they sealed in the box. On or about August 1, 2014, a DHS agent posing in an undercover capacity as a Federal Express employee "delivered" the box to the Manchester, New Hampshire, address listed on the package. As the agent approached the front of the multi-tenant residence he saw a group of people, one of whom was later identified as F.P., engaged in conversation outside the building. The agent approached the group and announced that he had a package for "Jimmy Paul." F.P. said the package was for him and signed a form documenting that he accepted delivery of the box.

At that point, other DHS agents who were conducting surveillance in the area moved in, identified themselves, and took possession of the box. F.P. agreed to accompany the agents to his

-3-

apartment and to speak with them. F.P. eventually told the agents about his arrangement with the defendant to accept the package. At the agents' direction, F.P. sent a text message to the defendant in Spanish informing him that the package had arrived and asking when the defendant would pick it up. The defendant responded by texting, "Ya boy."

About half an hour later, at the agents' direction F.P. called the defendant to ask when he was coming. The defendant said he would be there in 10 minutes. About 20 minutes later, the defendant parked his car across the street from F.P.'s residence. Agents observed the defendant walk into the driveway of F.P.'s residence where he was approached by a man who was part of the group who were outside the building when the package was delivered to F.P. The man spoke with the defendant and pointed in the direction of F.P.'s apartment. The defendant then returned to his car.

As the defendant drove away, an agent saw him raise a cell phone to his ear. At that moment F.P. received a call from the defendant. The defendant told F.P. that he was told police and federal agents were at F.P.'s building earlier. F.P. responded that police had been there earlier looking for someone, but that they had left. The defendant asked F.P. if he still had the package. When F.P. said that he did, the defendant said he would call back in a few minutes. The defendant never called F.P. back.

Federal Express business records showed that the package was tracked on-line by someone using a device with an internet protocol address assigned to a residence in Manchester, New Hampshire, at which the defendant frequently stayed. Additionally, cell phone records show that the defendant and F.P. had frequent contact in the weeks leading up to August 1, 2014, and that all cell phone contact between them ceased on the evening of August 1, 2014.

-4-

A laboratory analysis of the substance secreted in foil packages slipped into the flaps of the cardboard box showed it contained cocaine base. The contents of the packages were combined before the chemical analysis was performed. The combined net weight of contents of the packages was 558.04 grams.

    4.   Penalties, Special Assessment and Restitution.

The defendant understands that the following penalties apply to the counts of the Indictment and that the Court may impose sentences of imprisonment on each count of the Indictment that run consecutively in whole or in part:

Count One

A.     A maximum prison term of 20 years (21 U.S.C. § 841(b)(1)(C));

B.     A maximum fine of $1,000,000 (21 U.S.C. § 841(b)(1)(C)); and

C.     A term of supervised release of at least three (3) years and not more than life. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (21 U.S.C. § 841(b)(1)(C)).

Count Two

A.     A maximum prison term of four (4) years (21 U.S.C. § 843(d)(1));

B.     A maximum fine of $250,000 (18 U.S.C. § 3571(b)(3)); and

C.     A term of supervised release of not more than one (1) year. The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release (18 U.S.C. § 3583(b)(3)).

The defendant also understands that he will be required to pay a special assessment of $100 for each count of conviction at or before the time of sentencing. 18 U.S.C. § 3013(a)(2)(A).

5.   Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines.   The defendant further understands that he has no right to withdraw his guilty plea if the applicable advisory guideline range or his sentence is other than he anticipated, except as expressly provided in this Plea Agreement.

The defendant also understands that the United States and the United States Probation Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range within the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise, and is not binding on the United States, the Probation Office, or the Court, except as expressly provided in this Plea Agreement.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the government and the defendant stipulate and agree to the following:

    (a)    The parties shall recommend that the defendant be sentenced to a term of imprisonment of 37 months.

The parties intend the above stipulation to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty pleas.

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

    7.  Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

    A.    Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

    B.    Challenges the United States' offer of proof at any time after the plea is entered;

    C.    Denies involvement in the offense;

    D.    Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

    E.    Fails to give complete and accurate information about his financial status to the Probation Office;

F.       Obstructs or attempts to obstruct justice, prior to sentencing;

G.       Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.       Fails to appear in court as required;

I.       After signing this Plea Agreement, engages in additional criminal conduct; or

J.       Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant further acknowledges that he is satisfied with the representation provided to him by his counsel

and that the defendant has discussed with his counsel the substance and terms of the negotiations which resulted in his plea agreement with the government.   The defendant also understands that he has the right:

    A.    To plead not guilty or to maintain that plea if it has already been made;

    B.    To be tried by a jury and, at that trial, to the assistance of counsel;

    C.    To confront and cross-examine witnesses;

    D.    Not to be compelled to provide testimony that may incriminate him; and

    E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions about the offense, and if he answers those questions falsely under oath, on the record, and in the presence of counsel, his answers will be used against him in a prosecution for perjury or making false statements.

9.   Acknowledgment of Guilt; Voluntariness of Plea.

The defendant understands and acknowledges that he:

    A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

    B.    Is entering into this Plea Agreement without reliance upon any promise of benefit of any kind except as set forth in this Plea Agreement;

    C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

    D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.      Is completely satisfied with the representation and advice received from his undersigned attorney.

10.  Scope of Agreement.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority.  The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from the guilty plea.  The defendant understands such matters are solely within the discretion of the specific non-party government agency involved.  The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.  Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

12.  Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the Information in this case.  The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

-10-

13.  <u>Waivers</u>.

A.  Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal.   By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.     His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.     All aspects of the sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect, or on the ground of ineffective assistance of counsel.

B.  Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.     His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; and

2.     All aspects of the sentence imposed by the Court if that sentence is the stipulated sentence or within the stipulated sentencing range specified in section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was

-11-

involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.   No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.    Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by the United States Attorney for the District of New Hampshire, or an Assistant United States Attorney.

16.    Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and void and no part of it may be enforced.

EMILY GRAY RICE
United States Attorney

Date: 3/2/16

By: _____
Mark S. Zuckerman
Assistant United States Attorney
Bar Association #48650
53 Pleasant St., 4th Floor
Concord, NH 03301
mark.zuckerman@usdoj.gov

The defendant, Juan A. Pichardo Mendez, certifies that he has read this 14 page Plea Agreement and that he fully understands and accepts its terms.

Date: 3-2-14

_____
Juan A. Pichardo Mendez, Defendant

-13-

I have read and explained this 14 page Plea Agreement to the defendant, and he has advised me that he understands and accepts its terms.

Date: _3/2/16_                    _____

Paul J. Garrity, Esq.
Attorney for Juan A. Pichardo Mendez

### Interpreter's Oath

I, _Edwin Mosquera_____, a Spanish language interpreter, do solemnly swear or affirm that, to the best of my ability, I have interpreted this Plea Agreement accurately and faithfully.

Signed: _____          _____3- 2 - 16_
                                          Date

-14-